STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, ET AL., APPELLANTS, V. VALENTINE STATE BANK: MRS. WALTER FLOWERS, INTERVENER, APPELLEE.

FILED JUNE 26, 1928. No. 26021.

*O. S. Spillman, Attorney General, C. M. Skiles and J. C. Quigley, for appellants.*

*W. C. Heelan, contra.*

Heard before GOSS, C. J., THOMPSON, EBERLY and HOWELL, JJ., and BEGLEY and BROADY, District Judges.

BROADY, District Judge.

Mrs. Walter Flowers, the appellee, filed her claim for $1,065.50 with the receiver, as the claim of a depositor against the insolvent Valentine State Bank. The receiver disallowed the claim, and Mrs. Flowers appealed to the district court, and that court found in her favor, entered judgment accordingly against the bank and allowed the claim as a judgment against the state guaranty fund com-

mission. The receiver and the guaranty fund commission appeal to this court.

On February 20, 1916, Mrs. Flowers deposited in her name, as Alice Flowers, the sum of $65.39 in the Valentine State Bank. On May 8, 1916, there was deposited in the same bank the sum of $1,065.50. This last deposit was in the name of Mrs. Walter Flowers and was made by F. M. Walcott, her attorney. Mrs. Flowers claims that when she made the deposits she intended to retain and keep the same as her own personal property, and that she never authorized or empowered any one to withdraw any of the deposits. No checks were drawn by her, nor was any demand ever made by her until 1925.

By his answer the receiver of the bank says, so far as the deposit of $65.39 is concerned, Mrs. Flowers has drawn out the entire amount by her check and there has been a complete withdrawal thereof; and as to the second deposit, of $1,065.50, says that it was made by F. M. Walcott, who was attorney for Mrs. Flowers, in the name of Mrs. Walter Flowers, and says that on the same day, after the deposit slip had been issued, Mrs. Flowers instructed an officer of the bank to credit the account to the credit of her husband, W. G. Flowers; that pursuant to that request and acting under such instructions the bank transferred the deposit to the account of her husband, that the account thereafter ran as common property of both the husband and this claimant, and claims that the money represented by this deposit had subsequently been withdrawn on the husband's general checking account.

This inquiry concerns only the deposit of $1,065.50, as it is clear, from the evidence, that the first deposit by Mrs. Flowers has been closed by subsequent withdrawals. The sole question to be determined is whether or not Mrs. Flowers authorized or directed that the deposit of $1,065.50 should be transferred or credited to the account of her husband.

It is undisputed that the original deposit was made in the name of Mrs. Walter Flowers and was made by F. M.

Walcott, her attorney, who was living at that time. She says that she received this money from her father's estate, and that the same was received after banking hours and that Mr. Walcott made the deposit for her and in her name, as shown by the original deposit slip. This was on May 8, 1916. The deposit was made as a general deposit without interest. Mrs. Flowers claims that she has never withdrawn any of the account, nor ever authorized or empowered any one to transfer the same to any other person. She admits that she has never made any demand for the money, or any part of it, until about 1925 and after the bank became insolvent. She produced the original deposit slip in support of her contention. The duplicate deposit slip which was retained by the bank shows a pencil notation written in the handwriting of one of the bank officers or employees, as follows: "Deposit to the account of W. G. Flowers." The bottom part of this deposit slip is mutilated and torn off, together with a part of the pencil notation. The record does not show that this notation was made by Mrs. Flowers or at her direction, and no written authorization of Mrs. Flowers was produced, nor was any witness able to testify directly that she ever authorized such transfer. No officer of the bank could recall any of the particulars to the transaction other than as above stated, together with the bank ledger sheets, which were introduced in evidence, showing the separate accounts of both Mrs. Flowers and her husband, W. G. Flowers. Mrs. Flowers admits she made no demand for payment of this money or any part of it until early in 1925, nine years, at least, after the original deposit was made. The bank pleads that, on the first of each month following the original deposit, they sent a statement of the account to each depositor together with canceled checks, and that they sent the same to Mrs. Flowers and also to her husband, and that neither Mrs. Flowers nor her husband ever made any complaint as to the condition of their account as shown by these statements. As defense the bank pleads an account stated, estoppel, and the statute of limitations.

As there is little direct evidence in this case, it is necessary to give a complete picture of the whole situation, which, in substance, is as follows: Mr. and Mrs. Flowers were ranchers and farmers residing in Cherry county, and, according to her testimony, at least a part of the operations were carried on in her name. She says that much of the time she operated the ranch herself while her husband was doing other work. She says she never drew any checks on the bank on either her own or her husband's account, and the bank officials say they have no specific knowledge or recollection of this item, but that the husband did a considerable checking account at the bank, and also borrowed considerable money from the bank. The ledger sheets of the bank show only two or three entries in the separate account of Mrs. Flowers, which were in February and March of 1916, and the account balanced and closed on April 19, 1916. During the years following 1916 it is admitted by Mrs. Flowers that she and her husband were borrowers of considerable money at the bank, and as security for payment of which they gave chattel mortgages on their personal property. Like a great many other farmers and ranchers following the years 1919 and 1920, they became heavily involved financially, and in 1924 or 1925, after they had lost the ranch by foreclosure, they held an auction sale of all their personal property, and while this sale was being held the bank garnisheed the clerk of the sale and out of that proceeding obtained payment of some $300 or $400 owing to the bank by the Flowers. It was following this garnishment proceeding that Mrs. Flowers made the first demand on the bank for the account at stake in this action.

While Mrs. Flowers denies that she ever authorized the transfer of this account to the credit of her husband and none of the officers, now with the bank, testifies to this particular transaction, the ledger sheets of the bank show that on May 6, 1916, deposit was made to the credit of her husband, W. G. Flowers, in the sum of $1,065.50, and that

thereafter Mr. Flowers made deposits and checking and withdrawals. On March 8, 1917, he had overdrawn some few cents. Deposit sheets for subsequent years are not shown, but it is clear, from the record, that these people continued to be customers of the bank until 1925.

It does not seem possible that any person in comparatively meager circumstances would let over $1,000 remain in an open checking account with the bank for nearly ten years without giving it any attention or at least placing it so it would draw interest. It is almost as startling as to read of a big business man completely forgetting a deposit of $5,000,000. It may happen. But it is so incredible as to at least cast a heavy shadow of doubt. It does not seem possible that this woman, who was more or less active in assisting her husband in the operation of considerable of a ranch business and knew that he was borrowing money more or less extensively at the bank and who at least had knowledge, if not actually joining in the execution, of chattel mortgages to secure loans of money from this particular bank, would leave a deposit of over $1,000 lying idle without interest in the same bank for nine or ten years. The evidence offered by the bank was to the effect that on the first of each month they sent a statement to each depositor showing deposits, withdrawals, and balances, together with canceled checks, and that such statements were sent to both Mrs. Flowers and to her husband, and that the statement would show Mrs. Flowers' account was closed, and the husband's account would show the transfer of this particular deposit to his account, and that no objection had ever been made to these statements. Mrs. Flowers admits that she had access to these statements and could have inspected them had she desired, but says that it was her husband's account, and that she did not pay any attention to it; and that she did not know the bank had transferred the money to her husband's account. It may be so, but it does not seem within the bounds of reason that, in such a situation as these people who were having a hard struggle during these years, an item of this

size would be completely forgotten and lost for a period of approximately nine years. Mrs. Flowers admits that the bank sent monthly statements of the accounts of both herself and husband, and no objection was made for more than nine years.

The evidence in this case is not sufficient to support the finding and decree of the district court. The decree is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

HOWELL, J., dissents on the facts.